UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DARYL STANLEY, | ) |
| Plaintiff, | ) |
| | ) NO. 2:06-CV-072 |
| v. | ) |
| UNITED STATES DEPARTMENT OF THE TREASURY, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Daryl Stanley brought this action under the Freedom of Information Act seeking documents related to the investigation of an IRS employee whom he alleges used fraud and intimidation to get him to authorize the application of certain funds toward his outstanding tax liability. Before the Court is Defendant's Renewed Motion for Summary Judgment. [DE 32.] Defendant argues that the records fall under FOIA Exemption (7)(C), which exempts "records or information compiled for law enforcement purposes" which, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Plaintiff acknowledges that Exemption 7(C) allows the government to withhold names of agents and other personal data, but argues that the exemption does not apply to records that contain the substance of the investigation. Because Plaintiff has failed to show that disclosure of the withheld documents is in the public interest, Defendant's motion for summary judgment is granted.

**I. FACTUAL BACKGROUND**

The parties do not dispute the material facts in this case. Stanley brought this action to compel the Department of the Treasury to produce records relating to the investigation of a

complaint that Stanley had made against an IRS employee. That employee was an Offer Examiner whose job it was to evaluate offers of compromise made by taxpayers. The Examiner contacted Stanley some time after Stanley submitted an Offer in Compromise to the IRS along with a $94,859 deposit. According to the Complaint, the Examiner informed Stanley and his CPA that unless Stanley executed an authorization to apply the deposit toward Stanley's outstanding tax liability and forfeited all of his rights to the deposit, his Offer in Compromise would be returned without even being considered. Stanley says that he objected to signing the authorization, but eventually did.

In April 2004, Stanley filed a complaint against the Examiner with the Taxpayer Advocate Service, alleging fraud and intimidation, and seeking the return of his deposit. Eventually, the matter was referred to the Treasury Inspector General for Tax Administration (TIGTA), for investigation. Several agents participated in the investigation, which included interviews of Stanley and his CPA. [DE 34 at 10-11.] For reasons not disclosed and not material to this litigation, the IRS continued to refuse to return Stanley's deposit.

On July 21, 2005, Stanley's attorney requested information about the TIGTA investigation from the Treasury Department, stating that Stanley "requires your agency's findings of wrongdoing as proof of the IRS's wrongful taking and retention of his assets to bolster his efforts to recoup his assets," and seeking "a copy of the findings of the above-referenced investigation."[1] [DE 32-3 at 1-2, 8.] On September 9, 2005, the Department of Treasury, through TIGTA, responded by producing 11 full pages and 81 redacted pages of

---

[1] This original request was rejected for failing to contain Stanley's identification and consent to release the information, but Stanley's attorney cured this defect in a subsequent letter containing an identical request for documents.

responsive documents.  The response cited FOIA Exemption 7(C) as the basis for the redactions, and asserted that "TIGTA neither admits nor denies the existence of records concerning anyone other than [Stanley]."  [*Id.* at 18.]  Stanley appealed the determination, believing that TIGTA was refusing to disclose documents relevant to Stanley's complaint.  [*Id.* at 20.]  On November 8, 2005, the Treasury Department notified Stanley that his appeal had been denied.  [*Id.* at 23.]

Coincidentally, several weeks later, TIGTA altered its system of records to allow a new routine use of TIGTA Office of Investigation files.  The new policy allows TIGTA to:

> Disclose information to complainants . . . concerning the status and/or results of the investigation or case arising from the matters of which they complained and/or of which they were a victim, including, once the investigative subject has exhausted all reasonable appeals, any action taken.  Information concerning the status of the investigation or a case is limited strictly to whether the investigation or case is open or closed.  Information concerning the results of the investigation or case is limited strictly to whether the allegations made in the complaint were substantiated or were not substantiated and, if the subject has exhausted all reasonable appeals, any action taken.

[*Id.* at 26.]  Meanwhile, in February 2006, having exhausted his administrative appeals, Stanley commenced this lawsuit.  On May 6, 2006, Defendant stated that the change in its records system quoted above allowed it to disclose that it had 82 additional pages of responsive documents, 58 of which it then produced in full, and six of which it produced in part.  [DE 32-2 at 19.]  At the same time, TIGTA also released unredacted versions of 73 of the 81 pages that were previously produced in redacted form.  [*Id.*]  TIGTA acknowledged that it was continuing to withhold 18 pages in full and 14 pages in part.

TIGTA asserted that the withheld documents were all protected from disclosure by FOIA Exemption 7(C).  It stated the information being withheld on the redacted documents included summaries of the basis for, and results of, the investigation, internal case tracking information, and personal information about the subject of the investigation.  It also represented that the 18

3

full pages of documents consisted of "three pages of chronological case worksheets and investigative plans, a one-page letter from an IRS official to an individual other than Plaintiff, four pages of the Report of Investigation Summary and Exhibit List, and ten pages of memoranda of interviews of individuals other than Plaintiff conducted by TIGTA agents during the course of the investigation." [*Id*. at 20.]

Two weeks after producing these additional documents, Defendant filed for summary judgment. Stanley continued to assert that the withheld documents did not fall within Exemption 7(C). On January 3, 2007, the Court denied summary judgment but with leave to refile it. I concluded that the government had not, at that point, met its burden of demonstrating that the documents met the Exemption. To be better informed on the contents of the records, I ordered the government to submit the records to the court under seal so that I could review them in camera. Thereafter, both parties again moved for summary judgment.

## II. DISCUSSION

Summary judgment is the appropriate method for resolving a FOIA dispute, provided, as in other cases, that the pleadings and affidavits or declarations show that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 313-14 (D.C. Cir. 1988). On a motion for summary judgment under FOIA, the Court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B).

FOIA requires that, "upon any request for records which . . . reasonably describes such records," an agency "make the records promptly available." 5 U.S.C. § 552(a)(3)(A). This mandate of public disclosure flows from the principle "that a democracy cannot function unless

4

the people are permitted to know what their government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989) (quotation and citation omitted). Thus, FOIA promotes a policy of "'full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Id*. (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)).

In this case, FOIA Exemption 7(C) is the only provision that the government relies on to protect the TIGTA investigation documents from disclosure.  That exemption excludes "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

The threshold issue, then, is whether the documents constitute records "compiled for law enforcement purposes."  To show that a record was compiled for law enforcement purposes, the agency must show that "(1) it arose from an investigation 'related to the enforcement of federal laws . . .' (the 'nexus' requirement), and (2) 'the nexus between the investigation and one of the agency's law enforcement duties [is] based on information sufficient to support at least 'a colorable claim' of its rationality." *Simon v. Dep't of Justice*, 980 F.2d 782, 784 (D.C. Cir. 1992) (quoting *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982)).  The exemption applies to files compiled "in connection with investigations that focus directly on specific alleged illegal acts which could result in civil or criminal sanctions." *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002) (citing *Rural Housing Alliance v. Dep't of Agriculture*, 498 F.2d 73, 81 (D.C. Cir. 1974)).

Here, the records were compiled by the Treasury Inspector General for Tax

5

Administration, a law-enforcement agency charged with oversight of the administration of tax laws, in response to a complaint of fraud on the part of an IRS employee. Thus, the records arose from an investigation related to the enforcement of the tax laws, and the investigation was part and parcel of TIGTA's law enforcement duties. The Court therefore concludes, and Stanley has not contended otherwise, that these records were "compiled for law enforcement purposes."

The more difficult task is to determine whether disclosure of the documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This requires a determination of whether Exemption 7(C) covers the type of privacy interest at issue in this case, and if so, a balancing of the privacy interest against public interests to determine whether the invasion is unwarranted. *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 171 (2004).

First, a court must determine whether Offer Examiner and the TIGTA employees who participated in the investigation have a "personal privacy" interest in nondisclosure of the documents. *Reporters Comm.*, 489 U.S. at 762. Courts have held that "a government employee has at least a minimal privacy interest in his own employment record and evaluation history, which includes a general interest in the nondisclosure of diverse bits and pieces of information, both positive and negative, that the government, acting as an employer, has obtained and kept in the employee's personnel file." *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990); *see also U.S. Dep't of Navy v. Fed. Labor Relations Auth.*, 975 F.2d 348, 352 (7th Cir. 1992) (federal employees have a privacy interest in the release of their names in association with their employment with the federal government). Likewise, "IRS personnel and third party sources involved in [an] investigation have a similar interest in non-disclosure of personal

6

information which would enable plaintiffs to contact them, when they may prefer not to interact with [plaintiffs] regarding the issues of tax investigation." *Becker v. IRS*, 1992 WL 67849, at *5 (N.D. Ill. Mar. 31, 1992).

The documents Stanley seeks are from the file TIGTA compiled in the course of investigating Stanley's complaint against Offer Examiner. As the government has accurately represented, the redacted pages contain personal information about the Examiner, the names of other agents, investigation plans, summaries of the investigation, interview memoranda, and a letter. Some of this information implicates the privacy interests of the agents who participated in the investigation, but all of it implicates the privacy interests of the Offer Examiner who was the subject of the investigation. Stanley insists that "the Treasury has gone beyond protecting the privacy of witness information, to concealing the substance of its investigation." (Opp. Br. at 3.) But this reading of the privacy exemption to cover only personal identifying information is too cramped; the Offer Examiner also has a legitimate interest in protecting the substance of an investigation into his professional conduct. *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (government attorney who was subject of Office of Professional Responsibility investigation "still ha[d] a privacy interest . . . in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment . . . ."). Thus, the Court finds that 7(C) encompasses the Examiner's interest in nondisclosure of information about the investigation as well as his personal data.

Once the privacy concerns addressed by Exemption 7(C) are found to be present, the person seeking the information must establish a sufficient reason for the disclosure:

> First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the

>citizen must show that the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

*Favish*, 541 U.S. at 172.  In this case, Stanley has failed to identify any *public* interest in disclosure of the requested documents.  Rather, he simply argues that Exemption 7(C) does not apply here because the Offer Examiner's conduct was allegedly illegal.  (Opp. Br. at 4).  Construed most favorably to Stanley, this argument could be read as asserting a public interest in disclosure of documents showing that an IRS agent acted improperly in performing his duties.  However, Stanley has not shown that this information is in the public interest, as opposed to his own private interest.

Stanley's attorney made it clear in his correspondence with TIGTA that he wanted the investigation files in order to establish his entitlement to the deposit that he says he forfeited only because he was coerced into doing so.  (DE 32-3 at 1) ("Mr. Stanley requires your agency's findings of wrongdoing as proof of the IRS's wrongful taking and retention of his assets to bolster his efforts to recoup his assets.").  But "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny . . . rather than on the particular purpose for which the document is being requested."  *Reporters Comm.*, 489 U.S. at 772 (citation and quotation omitted).  Thus, the fact that disclosure is in the requester's own personal interest does not establish the existence of a "public interest" for purposes of FOIA.  *Massey v. FBI*, 3 F.3d 620, 625 (2d Cir. 1993) ("[T]he mere possibility that information may aid an individual in the pursuit of litigation does not give rise to a public interest."); *Stone v. FBI*, 727 F. Supp. 662, 667 (D.D.C. 1990) ("[T]he FOIA was not designed to benefit private litigants.") (internal quotation and citation omitted); *Neely v. FBI*,

8

208 F.3d 461, 464 (4th Cir. 2000) (requester's desire to use government documents to establish his own innocence indirectly is not a FOIA-cognizable interest, because the innocence of a particular defendant in a particular case tells nothing about matters of substantive law enforcement policy that are properly the subject of public concern). Therefore, it is not appropriate to include Stanley's personal interest in using the documents to recover his deposit in our balancing of the interests.

      The Court acknowledges that "there is a strong public interest in monitoring the conduct and actual performance of public officials." *Baez v. Dep't of Justice*, 647 F.2d 1328, 1339 (D.C. Cir. 1980). For example, the public might have an interest "in knowing that a government investigation itself is comprehensive, that the report of an investigation released publicly is accurate, that any disciplinary measures imposed are adequate, and that those who are accountable are dealt with in an appropriate manner." *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984). But the Supreme Court has stated that FOIA's purpose is not "fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773. In evaluating the strength of the public interest, "it will ordinarily be enough for the court to consider, when balancing the public interest in disclosure against the private interest in exemption, the rank of the public official involved and the seriousness of the misconduct alleged." *Kimberlin*, 139 F.3d at 949. Obviously, the public interest in disclosure is higher when the individual under investigation is a high-ranking public official rather than a low-level agency employee. *Stern*, 737 F.2d at 92; *Providence Journal Co. v. Dep't of the Army*, 981 F.2d 552, 568-69 (1st Cir. 1992).

In this case, Plaintiff seeks records of an investigation into a low-level IRS employee's alleged misconduct in dealing with a single taxpayer – Plaintiff himself.  Although he contends that the Offer Examiner acted unlawfully, he does not assert any impropriety on the part of TIGTA that might possibly give rise to a public interest in learning about that agency's investigation processes.  Rather, he wants to use TIGTA's conclusions about the Examiner's conduct to bolster his attempt to recover his deposit money.  Particularly in the absence of any attempt by Stanley to articulate a public interest to counterweight the privacy interest of the IRS employee, I conclude that the balancing of interests weighs in favor of nondisclosure.

Finally, Stanley incorrectly asserts that the protection of Exemption 7(C) is lost here because "unauthorized or illegal investigative tactics" were employed.  (Opp. Br. at 3-4.)  However, the cases cited by Stanley stand for the proposition that investigative records cannot be shielded by the exemption where those records contain information that was procured unlawfully, and therefore not for a "law enforcement purpose."  *See Weissman v. CIA*, 565 F.2d 692, 696 (D.C. Cir. 1977) (CIA was not authorized to conduct a background check on plaintiff, and therefore, records generated did not fall within law enforcement exemption); *Kuzma v. IRS*, 775 F.2d 66, 68 (2d Cir. 1985) (where allegations of illegal investigatory practices were unfounded, documents were exempt under law enforcement exemption); *Kanter v. IRS*, 433 F. Supp. 812, 822 (N.D. Ill. 1977) (affidavits were insufficient to enable court to determine whether nondisclosure was appropriate under Exemption 7(A), where plaintiff, who was subject of criminal prosecution, alleged that IRS unlawfully obtained evidence against him).  However, the allegedly unauthorized or illegal tactics at issue here were those of the IRS employee, not TIGTA, which compiled the investigatory records.  As discussed above, Stanley does not take

10

issue with the government's assertion that the records were, in fact, compiled for a "law enforcement purpose."  Thus, Plaintiff's argument in this regard is frivolous.

## III. CONCLUSION

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment [DE 32] is **GRANTED**.  The Clerk shall **ENTER FINAL JUDGMENT** in favor of Defendant, and shall treat this civil action as **TERMINATED**.  All further settings in this action are hereby **VACATED**.

**SO ORDERED**.

ENTERED: July 9, 2007

s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT